UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                   )
                                   )
**JOSE GERONIMO-MARTINEZ,**        )
                                   )
          Petitioner,         )
                                   )
          v.                  )          Civil No. 17-cv-11085-DJC
                                   )
                                   )
**SEAN MEDEIROS,**                 )
                                   )
          Respondent.         )
                                   )
                                   )
_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                        August 13, 2018

### I.    Introduction

Petitioner Jose Geronimo-Martinez ("Geronimo-Martinez") filed a petition seeking a writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2254. D. 1. Respondent Sean Medeiros ("Medeiros"), Superintendent of the Massachusetts Correctional Institution at Norfolk, opposes the Petition. D. 19. For the reasons stated below, the Court DENIES the Petition, D. 1.

### II.    Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the Court may grant a petition for a writ of habeas corpus if the state adjudication is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). AEDPA sets out this standard for reviewing state

1

court decisions because "[s]tate courts are adequate forums for the vindication of federal rights." Burt v. Titlow, 571 U.S. 12, 15 (2013). To obtain relief, Geronimo-Martinez must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fair-minded disagreement." Id. at 16 (quoting Harrington v. Richter, 526 U.S. 86, 103 (2011)) (alteration in original).

The state adjudication is contrary to clearly established precedent "if the state court either 'applies a rule that contradicts the governing law set forth in our cases,' or 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'" Penry v. Johnson, 532 U.S. 782, 792 (2001) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). The state adjudication is "an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014).

To show the state court's factual determinations were unreasonable, Geronimo-Martinez "bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence.'" Burt, 571 U.S. at 18 (quoting 28 U.S.C. § 2254(e)(1)).

## III. Factual Background

The following facts are drawn from the Appeals Court opinions from March 1, 2011, S.A. at 61-62; Commonwealth v. Geronimo-Martinez, 78 Mass. App. Ct. 1130, 2011 WL 692958, at *1 (2011), and February 23, 2017, S.A. at 321-23; Commonwealth v. Geronimo-Martinez, 91 Mass. App. Ct. 1107, 2017 WL 715125, at *1 (2017), and relevant portions of the grand jury and trial transcripts, which were included in Medeiros's supplemental answer ("S.A."), D. 11, D. 16.

A. **Grand Jury**

On May 11, 2007, Lori Murray, the pregnant ex-girlfriend of Geronimo-Martinez, testified before a grand jury. S.A. at 206-07, 211. Murray was accompanied by Keith Frost, a Methuen police officer, who the prosecutor explained was there "only . . . for security purposes." S.A. at 209. When asked by the prosecutor if Murray was in handcuffs while testifying, she responded, "Yes." S.A. at 211. Murray testified that Dennis Gauthier, Jr. told Geronimo-Martinez and her about a plan to steal money that Gauthier's father kept in a safe in the home that he shared with his father and mother. S.A. at 217-19. Murray also testified that Geronimo-Martinez told her, after the fact, that he and Gauthier had executed the plan to steal the money, but that the plan had gone awry. S.A. at 228. Lastly, Murray testified that she had an abusive relationship with Geronimo-Martinez and that he had been previously arrested for assaulting Murray. S.A. at 219-20. On May 18, 2007, the grand jury indicted Geronimo-Martinez for home invasion, in violation of Mass. Gen. L. c. 265 §18C, and assault with a dangerous weapon, in violation of Mass. Gen. L. c. 265 §15B(b). S.A. at 140-41.

B. **At Trial**

Geronimo-Martinez went to trial in June 2008 on these two charges. D. 16 at 5. At the beginning of jury empanelment, the trial court (Lu, J.) stated that jury empanelment would begin with "bring[ing] [the venire] in, [] ask[ing] them all the questions, and then [] tak[ing] everybody out and bring[ing] them in one by one." D. 16 at 9. After asking a series of questions to the whole venire, the judge then stated that "[it was] going to excuse everybody, except for a certain number of jurors who [the attorneys] will identify . . . ." D. 16 at 19. The transcript then reflects a note that reads "([v]enire excused and individual prospective jurors brought in individually for voir dire in open court)." D. 16 at 19.

On June 11, 2008, at the end of trial, the court instructed the jury about the home invasion charge. D. 16-6 at 96-97. The instructions provided that to convict Geronimo-Martinez for home invasion, the government must prove the following elements: first, "that [Geronimo-Martinez] by joint venture unlawfully entered the dwelling place of another;" second, "Geronimo-Martinez knew or had reason to know one or more persons were present in the dwelling house when joint venturers were entering;" third, "the joint venturers were armed with a dangerous weapon at the time of the entry;" and fourth, "joint venturers used force or threatened the imminent use of force on any person within the dwelling house or alternatively that the joint venturers intentionally caused injury to any person within the dwelling place." D. 16-6 at 96-97. The court further instructed the jury as to the first element of entry:

> "The Commonwealth must prove beyond a reasonable doubt that the defendant or the joint venturers had no right of habitation or occupancy of the dwelling house at the time of the entry or that the joint venturers made a non-consensual entry into the dwelling house." D. 16-6 at 97.

During deliberations, the jury asked "do all residents have to consent [for] entry to be lawful?" D. 16-6 at 125. After the court consulted with the defense attorney and prosecutor, D. 16-6 at 127, it responded to the question by stating "no." D. 16-6 at 128.

On June 12, 2008, the jury convicted Geronimo-Martinez of home invasion and acquitted him on the assault with a dangerous weapon charge. D. 16-6 at 139; Geronimo-Martinez, 91 Mass. App. Ct. at *1. He was sentenced to prison for twenty years to twenty years and one day. S.A. at 4.

## IV. Procedural History

On March 16, 2010, Geronimo-Martinez appealed his conviction on two grounds, including an allegedly improper jury instruction regarding the element of entry for the home invasion charge. S.A. at 7, 20. The Appeals Court affirmed the conviction. S.A. at 61; Geronimo-

4

Martinez, 78 Mass. App. Ct. at *1, and the Supreme Judicial Court denied the application for further appellate review. S.A. at 89; Commonwealth v. Geronimo-Martinez, 459 Mass. 1110 (2011).

On March 6, 2012, Geronimo-Martinez filed a motion for post-conviction relief or new trial. S.A. at 5. He claimed, among other grounds, that his Sixth and Fourteenth Amendment rights to public trial were violated because the public and a family member were allegedly excluded during jury empanelment. S.A. at 131. The trial court denied the motion on December 26, 2013 because it determined there was no courtroom closure. S.A. at 177-79.

Geronimo-Martinez renewed his motion for post-conviction relief on September 24, 2014. S.A. at 242. He argued, among other grounds, that his due process rights were violated when a pregnant witness testified in handcuffs before the grand jury, S.A. at 194, and that his counsel was ineffective because he did not move to dismiss the indictments before trial, S.A. at 199. The trial court denied the motion on February 11, 2015. S.A. at 249.

Geronimo-Martinez appealed the denial of his motions for post-conviction relief or new trial to the Appeals Court. S.A. at 12; 250. The Appeals Court affirmed on February 23, 2017. S.A. at 321; Geronimo-Martinez, 91 Mass. App. Ct. at *1. He requested further appellate review and the Supreme Judicial Court denied review on April 27, 2017. S.A. at 362; Commonwealth v. Geronimo-Martinez, 477 Mass. 1102 (2017).

Geronimo-Martinez filed this Petition asserting four grounds for relief. D. 1. He argues that his due process rights were violated in two ways: first, the jury instructions did not correctly articulate the burden the government had to meet for the element of unconsented entry and therefore improperly negated his defense that the entry was consensual, D. 18 at 15; and second, the government forced a pregnant witness who was an alleged accessory to testify in handcuffs

5

during the grand jury proceedings, D. 18 at 23.[1]  He also argues that his Sixth Amendment right to public trial was violated "when the court excused the public from jury selection," D. 18 at 20, and that his Sixth Amendment right to effective counsel was violated because his trial counsel was ineffective for not seeking dismissal of the indictment.  D. 18 at 26.

V. **Discussion**

   A. **Improper Jury Instruction**

Geronimo-Martinez contends that the jury instructions during trial "did not properly instruct the jury on the [government]'s burden of proof." D. 18 at 16.  As noted, the jury instruction stated with respect to the element of entry that "[t]he [government] must prove beyond a reasonable doubt that the defendant or joint venturers had no right of habitation or occupancy of the dwelling house at the time of the entry or that the joint venturers made a non-consensual entry into the dwelling house." S.A. at 62; Geronimo-Martinez, 78 Mass. App. Ct. at *2 n.1.  Geronimo-Martinez contends that "the defense was that Dennis [Gauthier, Jr., an occupant of the house] was a participant in a joint venture to rob the money from the safe and allowed the defendants into the home." D. 18 at 15.  Geronimo-Martinez argues that the jury should have been instructed that the government had to prove both that he had no right of habitation and that he entered the home without consent.  D. 18 at 17-18.  Geronimo-Martinez, however, contends that the phrasing of the instructions led the jury to interpret the instruction to mean that the government had to prove either that he had either no right of habitation or that he entered the home without consent.  D. 18 at 17-18.  Geronimo-Martinez argues that the latter interpretation allowed proof that he had "no right of habitation or occupancy" to be sufficient for proving unlawful entry, which erroneously removed

---

[1]As to these grounds, the Respondent argues that they are procedurally defaulted and the Court should deny these grounds for the Petition on this basis. D. 19 at 7-10.  Since, the Court concludes that these grounds fail on the merits, as discussed below, the Court does not address this argument.

from the government the burden of showing that Geronimo-Martinez had also not obtained consent to enter the house. D. 18 at 17-18.

The Appeals Court affirmed the trial court's decision denying Geronimo-Martinez's motions for post-conviction relief. S.A. at 61; Geronimo-Martinez, 78 Mass. App. Ct. at *1. First, it determined that taken as a whole, the jury instructions captured the burden of proof the government had to satisfy. The court stated that the "charge plainly conveyed that the [government] was required to prove unlawful entry by establishing that the intruders had neither the right of habitation nor the right of occupancy of the dwelling at the time they entered the . . . residence." S.A. at 61; Geronimo-Martinez, 78 Mass. App. Ct. at *1. Nonconsensual entry was "in apposition to, and hence the equivalent of, the absence of a right of occupancy." S.A. at 61; Geronimo-Martinez, 78 Mass. App. Ct. at *1.

The Appeals Court further reasoned that the jury's question during deliberation indicated that the jury interpreted the instruction in that manner. S.A. at 61; Geronimo-Martinez, 78 Mass. App. Ct. at *1. During deliberation, the jury asked: "[d]o all residents have to consent [for] entry to be lawful?" D. 16-6 at 125. The trial court, after discussion with both attorneys, responded, "No." D. 16-6 at 127-28. The question suggested to the Appeals Court that the jury understood that "they had to determine beyond a reasonable doubt that the intruders did not have consent to enter." S.A. at 61; Geronimo-Martinez 78 Mass. App. Ct. at *1. The Appeals Court noted that the fact that Geronimo-Martinez had no right of habitation was not disputed during trial, and so concluded that "[t]he issue of consent was the only live issue relating to the entry element of home invasion." S.A. at 61; Geronimo-Martinez, 78 Mass. App. Ct. at *1. The Appeals Court reasoned that the jury would not have needed to consider the issue of consent if the jury had interpreted in the instruction in the way Geronimo-Martinez contended that the jury did, because "it was

undisputed that the defendant and his coadventurers did not have the right to inhabit the . . . home." S.A. at 62; Geronimo-Martinez, 78 Mass. App. Ct. 1130 at *2 n. 2. The Appeals Court concluded that because the jury "followed the instruction as given, their verdict reflects that they rejected [] [Geronimo-Martinez's] theory that the home invasion was an 'inside job' undertaken with the permission of Dennis, Jr." S.A. at 62; Geronimo-Martinez, 78 Mass. App. Ct. 1130 at *2 n. 4.

Second, the Appeals Court stated that even if Dennis Jr. did give consent to enter, that consent would not have been sufficient because it was undisputed that Dennis Jr.'s mother had not provided consent to enter. S.A. at 62; Geronimo-Martinez, 78 Mass. App. Ct. 1130 at *2 n. 4; see Commonwealth v. Antonmarchi, 70 Mass. App. Ct. 463, 468-69 n.12 (2007) (holding that in crimes of home invasion, the "unit of prosecution" is the victim). The Appeals Court stated that the Massachusetts state law requires that since both Dennis Gauthier Jr. and his mother were the victims, both parties must provide consent. S.A. at 62; Geronimo-Martinez, 78 Mass. App. Ct. 1130 at *2 n. 4. The trial court in responding to the jury question, however, stated that only one person had to provide consent – a statement of law in conflict with the Appeals Court. D. 16-6 at 127-28. The Appeals Court determined that the trial court's instructions in response to the jury question was erroneous under Massachusetts state law. S.A. at 62; Geronimo-Martinez, 78 Mass. App. Ct. 1130 at *2 n. 4. It determined, however, that while the trial court provided instructions inconsistent with state law in this regard, that error benefitted Geronimo-Martinez. S.A. at 62; Geronimo-Martinez, 78 Mass. App. Ct. 1130 at *2 n. 4.

For a jury instruction to shift the burden of proof to the defendant improperly, it must violate "'fundamental fairness' by creating a 'reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." Lucien v. Spencer, 871 F.3d 117, 126 (1st Cir. 2017). "As a general rule, improper jury instructions will not form the basis for

8

federal habeas corpus relief." Niziolek v. Ashe, 694 F.2d 282, 290 (1st Cir. 1982). Even if the jury instructions are incorrect under state law, the "ailing instruction by itself" must so "infect[] the entire trial that the resulting conviction violates due process" to support habeas relief. Lucien, 871 F.3d at 126 (quoting Estelle v. McGuire, 502 U.S. 62, 71-72 (1991)). The instruction must be judged in the context of the whole trial and other instructions given to the jury. Id.; see United States v. Sabetta, 373 F.3d 75, 80 (1st Cir. 2004).

According to the Appeals Court, the trial court incorrectly instructed the jury, in response to the jury's question, that either Dennis Gauthier Jr. or his mother must provide consent to enter. S.A. at 62; Geronimo-Martinez, 78 Mass. App. Ct. 1130 at *2 n. 4. The Court acknowledges that the jury instructions were ambiguous regarding the element of entry. The instructions could have been interpreted to indicate that the government had to prove that Geronimo-Martinez had no right of habitation and no consent to enter the home, or the instructions could have been interpreted to mean that the government only needed to prove that Geronimo-Martinez had either no right habitation or no consent to enter. See S.A at 61; Geronimo-Martinez, 78 Mass. App. Ct. at *1. The latter would reduce the burden of proof for the government and negate Geronimo-Martinez's defense that he had consent to enter the home. The Court, however, can reasonably infer (as the Appeals Court did) from the jury question that the jury correctly understood that it needed to find that Geronimo-Martinez did not have consent to enter the home to convict him on the home invasion charge and was thus debating whether Geronimo-Martinez had consent to enter the home. See Watkins v. Murphy, Civ. No. 98-11114-NG, 2001 U.S. Dist. LEXIS 24119, at *24-25 (D. Mass. June 26, 2001), aff'd, 292 F.3d 70, 77 (1st Cir. 2002) (relying upon jury questions to determine a reasonable interpretation of jury instructions). The jury would not have been considering the issue of consent if it had understood that only a showing that Geronimo-Martinez

9

had nor right of habitation or occupancy was sufficient, because it was undisputed that Geronimo-Martinez did not have a right of habitation or occupancy in the Gauthiers' home. S.A at 62; Geronimo-Martinez, 78 Mass. App. Ct. at *2 n. 2.

The Appeals Court did not make an unreasonable decision in concluding that the jury applied the correct interpretation of the instructions. The Court reasonably concluded based on the jury question as well as other relevant facts from the trial that the jury understood its duty to determine whether Geronimo-Martinez had consent to enter the home. S.A. at 62; Geronimo-Martinez, 78 Mass. App. Ct. at *2. Accordingly, this Court denies this basis for the Petition.

### B. Right to Public Trial

Geronimo-Martinez also argues that his Sixth Amendment right to a public trial was violated when the trial court judge "excused everybody from the courtroom except for a certain number of jurors." D. 18 at 20. Whether the court was closed to the public is a factual determination and factual determinations made in the state courts are "presumed to be correct by the reviewing federal court." Smith v. Dickhaut, No. CV 12-30120-MGM, 2015 WL 12856458, at *2 (D. Mass. May 28, 2015). To overcome the presumption, Geronimo-Martinez must present "clear and convincing evidence," 28 U.S.C. § 2254(e)(1), that the state findings are clearly erroneous, Rosario v. Roden, No. CIV.A. 12-12172-DJC, 2014 WL 7409584, at *6 (D. Mass. Dec. 31, 2014), aff'd, 809 F.3d 73 (1st Cir. 2015).

Geronimo-Martinez, relying upon Presley v. Georgia, 558 U.S. 209, 215 (2010), argues that he has the "right to a public trial during the jury selection process." D. 18 at 20. He asserts that his family member, Jose M. Jackson, was one of those individuals excused. D. 18 at 20. Jackson and Geronimo-Martinez submitted affidavits in support of the claim. D. 18 at 20; S.A. 138, 142.

The trial court denied this claim because it concluded that the courtroom was not closed. The trial court determined that both Jackson's and Geronimo-Martinez's affidavits failed to satisfy the requisite factual showing for courtroom closure and were "self-serving." S.A. at 180; see Garuti v. Roden, 733 F.3d 18, 25 (1st Cir. 2013). The Appeals Court reviewed this claim. S.A. at 321; Geronimo-Martinez, 91 Mass. App. Ct. at *1. Addressing the trial court's findings on this issue, the Appeals Court ruled that there was little evidence to support Geronimo-Martinez's assertion. S.A. at 321; Geronimo-Martinez, 91 Mass. App. Ct. at *1. The Appeals Court affirmed the trial court's decision, stating that the trial court "was not required to credit [Geronimo-Martinez]'s or [Jackson]'s affidavit[s]." S.A. at 321; Geronimo-Martinez, 91 Mass. App. Ct. at *1.

Geronimo-Martinez also relies upon the fact that the trial court stated that "[it was] going to excuse everybody," D. 16 at 19, as support that the public was excused from trial, D.18 at 21. The Appeals Court held that "[t]here was no evidence of a sign on the court room door or testimony from members of the public who were excluded. There was no evidence from the court officer who allegedly excluded the cousin even though the officer is identified in the transcript, and there was no affidavit from defense counsel, who did not object to any alleged closure." S.A. at 321; Geronimo-Martinez, 91 Mass. App. Ct. at *1.

The trial transcript supports the factual finding that trial court was excusing the venire, not the public. D. 16 at 19. The judge had indicated at the beginning of the jury empanelment process that he would excuse the venire from the courtroom after asking initial questions, and that prospective jurors would be brought into the courtroom one by one for voir dire, D. 16 at 9; 19, such that the word "everybody" referred to the venire, not the public at large. See id.; S.A. at 180-81.

As Geronimo-Martinez has not presented clear and convincing evidence to overcome the presumption of reasonable factual determinations made by the trial court, the granting of the Petition on this basis is not warranted.

**C. Grand Jury Testimony of Murray**

Geronimo-Martinez argues that the grand jury testimony of Murray, his former girlfriend who was handcuffed and pregnant at the time, violated his constitutional due process right. D. 18 at 23. This Court concludes that the state court's legal determination was neither contrary to nor an unreasonable application of federal law. 28 U.S.C. § 2254(d)(1).

Geronimo-Martinez relies upon Deck v. Missouri, 544 U.S. 626, 635 (2005), which held that the visible shackling of the defendant during the sentencing phase of a death penalty trial was inherently prejudicial and an unnecessary practice. Id.; D. 18 at 23. Applying Deck, he asserts "the handcuffing of the pregnant codefendant had a substantial and injurious effect that influenced the grand jury to indict him." D. 18 at 25.[2]

Geronimo-Martinez filed a renewed motion for post-conviction relief or new trial based on this ground, S.A. at 194, 242, which was denied by the trial court, S.A. at 249. The Appeals Court affirmed the trial court's decision. S.A. at 321; Geronimo-Martinez, 91 Mass. App. Ct. at *1. The Appeals Court reiterated the trial court's holding that Deck "does not apply to a codefendant testifying before the grand jury," because Deck was meant to protect defendants appearing at trial before a jury. S.A. at 322, 249; Geronimo-Martinez, 91 Mass. App. Ct. at *3-4. It was not unreasonable for the state court to rely on the distinction that Deck concerned trial testimony and

---

[2] Geronimo-Martinez refers to Murray as a codefendant at various points, as does the Massachusetts Appeals Court, although she was not tried at the same time as Geronimo-Martinez. This distinction, however, does not make a difference in the Court's analysis of the distinction from the facts and circumstances in Deck or the reasonableness of the legal determinations by the state court.

Geronimo-Martinez's claim concerned grand jury testimony, because there are significant differences between grand jury proceedings and trial. The grand jury has significant latitude in determining whether to indict. United States v. Calandra, 414 U.S. 338, 343 (1974). It "may compel the production of evidence or testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials." Id. A grand jury proceeding is typically ex parte, id., and the defendant has no right to testify or put exculpatory evidence before the grand jury, United States v. Williams, 504 U.S. 36, 51 (1992). Moreover, when a trial jury returns a guilty verdict, any errors before the grand jury are typically deemed harmless. United States v. Flores-Rivera, 56 F.3d 319, 328 (1st Cir. 1995) (noting that "[o]nce a defendant has been convicted by a petit jury, the petit jury's verdict of guilty beyond a reasonable doubt demonstrates fortiori that there was probable cause to charge the defendants with the offenses for which they were convicted" (citation omitted)).

Because the facts of this current case are distinguishable from Deck, the Appeals Court's legal determinations were not in contradiction nor an unreasonable application of federal law.[3]

### D. Ineffective Counsel Claim

Geronimo-Martinez claims his trial counsel was ineffective for not requesting dismissal of the indictment. D. 18 at 26. He argues that based on the following facts, there were three independent grounds for dismissing the indictment: 1) "the co-defendant was pregnant in handcuffs before the grand jury;" 2) "prosecutor used bad act testimony to obtain an indictment;" and 3) "the presence of an unauthorized person in grand jury room . . ." D. 18 at 26. The

---

[3] Geronimo-Martinez also argues that the testimony of the pregnant witness violated Article 12 of the Massachusetts Declaration of Rights. Since, however, "federal courts do not review state court decisions that rest on independent and adequate state grounds," Phoenix v. Matesanz, 189 F.3d 20, 24 (1st Cir. 1999), the Court does not reach this argument.

government argues that under the standard of Strickland v. Washington, 466 U.S. 668 (1984), the argument for ineffective counsel fails. D. 19 at 11-12. This Court agrees.

To establish ineffective assistance of counsel under Strickland, Geronimo-Martinez must satisfy two prongs: "(1) deficient performance by counsel (2) resulting in prejudice." Yeboah-Sefah v. Ficco, 556 F.3d 53, 70 (1st Cir. 2009) (quoting Malone v. Clarke, 536 F.3d 54, 63 (1st Cir. 2008). To demonstrate deficient performance, he must illustrate that the counsel's performance "fell below an objective standard of reasonableness under the circumstances." Ficco, 556 F.3d at 70 (quoting Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2007)). To demonstrate prejudice, Geronimo-Martinez must show, "that, but for the counsel's unprofessional error, there is reasonable probability that the result of the proceeding would have been different. Ficco, 556 F.3d at 70 (quoting Sleeper, 510 F.3d at 39).

As to his attorney's performance, Geronimo-Martinez relies upon three purported failures as the basis of his ineffective counsel claim. First, he argues the testimony before the grand jury of the pregnant witness, Murray, was prejudicial. The Court explained earlier why the state court appropriately rejected this argument. Second, Geronimo-Martinez argues that "bad act testimony" from Murray before the grand jury (presumably Geronimo-Martinez is referring to Murray's testimony before the grand jury that he had once been arrested for hitting her, Geronimo-Martinez, 2017 WL 715125, at *2) should have prompted his counsel to void the indictment. D. 18 at 26; S.A. at 113. However, even "inadequate or incompetent grand jury evidence" is not a sufficient basis to void indictment. United States v. Latorre, 922 F.2d 1, 7 (1st Cir. 1990). "An indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits." Costello v. United States, 350 U.S. 359, 363 (1956). That is, it is a "very rare" circumstance in which an impropriety in the presentation of evidence before

14

a grand jury would warrant dismissal "even where there has not been a petit jury verdict of convict—and all the more so when there has." Goodrich v. Hall, 448 F.3d 45, 50 (1st Cir. 2006). It appears that the testimony of Murray about the petitioner's alleged abuse of her came in the context of explaining her relationship to him before the grand jury. There is no indication in the record to suggest that he would not have indicted in the absence of such testimony. Id. Significantly, there is also no suggestion that the trial jury that convicted him was aware of this alleged improper testimony. Id.

Third, Geronimo-Martinez references the presence of an unauthorized individual, namely a police officer, in the grand jury proceeding as a ground for dismissing the indictment. D. 18 at 26. A grand jury indictment can be dismissed, as per Massachusetts state law, if the presence of an unauthorized individual could "interfere with the truth-seeking goal of the grand jury." S.A. at 322; Geronimo-Martinez, 91 Mass. App. Ct. at *2 (quoting Commonwealth v. Pezzano, 387 Mass. 69, 73, 438 N.E.2d 841 (1982)). In this case, Geronimo-Martinez has not presented any evidence to indicate that Officer Frost's mere presence affected adversely the grand jury proceedings and "interfer[ed] with the truth-seeking goal of the grand jury." S.A. at 322; Geronimo-Martinez, 91 Mass. App. Ct. at *2 (quoting Pezzano, 387 Mass. at 73). Moreover, the prosecutor noted police officer Frost was only present for security reasons. S.A. at 269. Because Geronimo-Martinez's claim for dismissal on this ground does not meet the legal standard for same, there was no reason for Geronimo-Martinez's counsel to move to dismiss the indictment. See S.A. at 322; Geronimo-Martinez, 91 Mass. App. Ct. at *5-6. That is, trial counsel does not have an obligation to pursue a motion to dismiss that will likely fail, so his actions were objectively reasonable in this regard. S.A. at 322; Geronimo-Martinez, 91 Mass. App. Ct. at *6. Accordingly, the Appeals Court

reasonably held the Geronimo-Martinez "did not show that any alleged errors in the grand jury proceedings [that] warrant dismissal." S.A. at 322; Geronimo-Martinez, 91 Mass. App. Ct. at *5.

Since Geronimo-Martinez has not satisfied the first prong of Strickland by failing to demonstrate that his trial counsel's conduct "fell below an objective standard of reasonableness," his claim on this ground fails and the Court need not reach the prejudice prong of Strickland.

## VI. Conclusion and Certificate of Appealability

For the foregoing reasons, the Court DENIES the Petition for a writ of habeas corpus. D. 1.

Geronimo-Martinez may receive a certificate of appealability only if he "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when "reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong." Miller–El v. Cockrell, 537 U.S. 322, 338 (2003) (internal quotations omitted). Based upon the analysis of the record and the applicable law, the Court does not, at this juncture, conclude that reasonable jurists would find its conclusion denying the Petition debatable or wrong. The Court, therefore, is not inclined to issue a certificate of appealability, but will give Geronimo-Martinez until September 4, 2018 to file a memorandum, not to exceed five (5) pages, if he seeks to address the issue of whether a certificate of appealability is warranted as to the Petition.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge